Roberta **GARRICK**,
**Individually, Plaintiff,**

**and**

**Roberta Garrick, Individually and as parent and next friend of Jamie Alan Garrick, a minor, and Sandi Jean Garrick, a minor, Plaintiff–Appellant,**

v.

**Don WEAVER, Harry Weaver, Todd Lecesne, and Errol Lecesne, Defendants,**

**Chris Key, Appellant,**

**Melton & Puccini, P.A., Intervenors–Appellees.**

**Nos. 87–2807, 87–2812 and 87–2813.**

United States Court of Appeals, Tenth Circuit.

Oct. 30, 1989.

Richard B. Addis and David L. Plotksy, Albuquerque, N.M., for plaintiff-appellant Roberta Garrick.

Robert E. Melton, of Melton ·& Puccini, P.A., Albuquerque, N.M., for intervenors-appellees, Melton & Puccini, P.A.

Chris Key, Albuquerque, N.M., pro se.

Charlotte Mary Toulouse of Toulouse, Toulouse & Garcia, P.A., Albuquerque, N.M., guardian ad litem.

Before McKAY, TACHA, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

This appeal is from an order of the magistrate approving a settlement and apportioning a fund. The case was heard by the magistrate after reference by the district court pursuant to 28 U.S.C. section 636(c).[1] The appellant attorneys, Robert Melton and Chris Key, and plaintiff-cross-appellant Roberta Garrick, on behalf of herself and her two minor children, allege that the magistrate abused his discretion in reviewing and revising attorneys' fees under two contingency fee contracts. Additionally, Roberta Garrick challenges the magistrate's order directing that the funds apportioned to the minor Garrick children be placed in a trust, claiming violations of the family's freedom of religion and New Mexico law. We affirm.

I.

The claims in this case arose from an automobile accident that seriously injured the plaintiffs, Roberta Garrick and her two minor children, and killed a passenger, Russell Littlepage. All three Garricks suffered permanent disabilities as a result of the accident. The Garricks and the defendants agreed to settle for $338,755, and the settlement was taken before the court for approval because of the presence of the minor Garrick children.

The Garricks were first represented in the settlement negotiations by attorney Melton, who also represented the Littlepage estate. Melton's dual representation created a potential conflict of interest because Garrick, the driver of the car in which Littlepage was killed, was potentially liable to the Littlepage estate. Melton and Garrick agreed that Melton was entitled to 33⅓% of any recovery the Garricks obtained. They later agreed to a fee of 25% if the case settled. Melton undertook settlement negotiations and procured a settlement offer that Garrick rejected. Garrick then discharged Melton.

Garrick next retained attorney Key to represent both herself and her children. Garrick and Key exchanged a number of letters trying to settle the terms of Key's retainer. Garrick eventually signed a retainer letter dated April 18, 1986, which purported to accept the terms offered in Key's earlier letter of February 6, 1986. Key and Garrick otherwise never formalized the terms of the retainer agreement. Key apprised Garrick of a potential conflict of interest between her and her children

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument. Issues raised in each separate appeal are considered herein.

and procured the appointment of a guardian ad litem to safeguard the children's interests. After the relationship between Key and Garrick deteriorated, Key notified Garrick that he was withdrawing and moved for permission to withdraw and for instructions regarding the representation of the children. Before the court granted Key permission to withdraw, Key signed a settlement offer on behalf of Garrick with her approval. Garrick then retained her current counsel.

Upon determining that Garrick had settled, Melton intervened to assert an attorney's lien for his fee pursuant to the Melton–Garrick contingency fee agreement. Key also appeared to defend his contingency fee. At the hearing the magistrate found that Melton had told both Garrick and representatives of the Littlepage estate of the conflict of interest, but also found that Melton had not outlined adequately to Garrick the ramifications of the conflict of interest. With respect to Key, the magistrate found that despite the long series of letters, Key and Garrick had not arrived at a common understanding of the material fee agreement. The magistrate entered judgment apportioning the settlement funds between Garrick and her two children and directed the guardian ad litem to place the children's money into a corporate trust in a federally insured national banking institution. The magistrate also awarded fees to attorneys Melton, Key, and the two guardians ad litem on a quantum meruit basis. Subsequent to his order apportioning the settlement fund, the magistrate granted the defendants' motion to pay the entire amount into the registry of the court pending resolution of the dispute over attorneys' fees on appeal. Following post-judgment motions and an earlier untimely appeal, these appeals followed.

## II.

We review the magistrate's award of attorneys' fees for abuse of discretion. *See Garrett v. McRee*, 201 F.2d 250, 254 (10th Cir.1953); *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1112 (7th Cir.1982).

## A.

■ Attorney Robert Melton challenges the magistrate's order setting aside his contingency fee agreement and awarding him fees on a quantum meruit basis. We first review the propriety of the magistrate's assumption of jurisdiction in determining attorneys' fees. Melton argues that the magistrate was without jurisdiction to review the propriety of his fees because Melton never participated in litigation before the court on the underlying subject matter. We disagree. It is well established that "[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, *with respect to the work done in the suit being litigated*, easily fits the concept of ancillary jurisdiction." *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir.1982) (emphasis in original). Even though Melton did not personally litigate before the court, his claim still is derived from "work done in the suit being litigated." Melton's claim thus falls within the rule of *Jenkins*. Moreover, to the extent Melton seeks to recover from the fund, the court has jurisdiction. *See Rosquist*, 692 F.2d at 1110 (court retains control of fund while disposition of fund is unsettled).

■ The second issue we must decide is whether federal or New Mexico law controls our analysis. Melton argues that we must look to New Mexico law concerning judicial modification of contractual contingent fees, citing *Novinger v. E.I. DuPont de Nemours & Co. Inc.*, 809 F.2d 212, 218 (3d Cir.) (reviewing Pennsylvania law governing contingency fees), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); and that New Mexico law does not permit a court to modify a contractual contingent fee, relying on language in *Citizens Bank v. C & H Construction & Paving Co., Inc.*, 93 N.M. 422, 600 P.2d 1212 (Ct.App.1979). Although in our view a federal court does have inherent power to review attorneys' fees, *see Rosquist*, 692 F.2d at 1111; *Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1108–09 (3d Cir.1979), we assume, arguendo, that New Mexico law governs the power of a federal court to superintend attorneys' fees in a diversity

action. We hold that under New Mexico law the magistrate did not abuse his discretion in setting aside Melton's contingency fee agreement and awarding fees to Melton on a quantum meruit basis.

In *Walters v. Hastings,* 84 N.M. 101, 500 P.2d 186 (1972), the New Mexico Supreme Court implicitly recognized that a contingent fee agreement may be altered where the attorney is discharged for cause. To be entitled to such relief, the court held that the party disputing the fee must

> prove some shortcoming in their attorney's professional activities in order to prevail.... [T]he prevailing standards must generally be established, by expert ... testimony.... We recognize that situations may arise in which the proof is so clear and obvious that a trial court could, with propriety, rule as a matter of law on whether the attorney met the standards. Similarly, cases may arise in which the asserted shortcomings of the attorney are such that they may be recognized or inferred from the common knowledge of laymen.

*Id.* 500 P.2d at 192 (citation omitted). The Garricks complied with this requirement. The trial court found that although Melton had discussed the conflict of interest with Garrick, he had failed to outline adequately the ramifications of the conflict of interest. The magistrate determined that this failure violated New Mexico ethics rule SCRA 16–107(A)(2), adopted by Local Rule 3.0 for the District of New Mexico. The magistrate thus declined to enforce the contingent fee agreement. Instead, he properly awarded fees to Melton based on the reasonable value of Melton's legal services. *See Ros-*

*quist,* 692 F.2d at 1112 (attorneys' fees viewed under reasonableness standard); *Northern Pueblos Enters. v. Montgomery,* 98 N.M. 47, 644 P.2d 1036, 1038 (1982) (where attorney asserts lien, court may assess reasonableness of asserted fee); *see also Novinger,* 809 F.2d at 218 (quantum meruit recovery for reasonable value of attorney services allowed under Pennsylvania law); *Garrett v. Garrett,* 140 Ariz. 564, 567, 683 P.2d 1166, 1169 (App.1983) (dictum) (discharged attorney entitled to reimbursement for reasonable value of services under Arizona law); *Fracasse v. Brent,* 6 Cal.3d 784, 100 Cal.Rptr. 385, 390, 494 P.2d 9, 14 (1972) (en banc) (quantum meruit recovery where attorney discharged for cause under California law); *Ross v. Scannell,* 97 Wash.2d 598, 647 P.2d 1004, 1010–11 (1982) (en banc) (attorney discharged for cause recovers under quantum meruit, but misconduct *may* cause forfeiture of all fees). Based on this record and New Mexico law, we cannot say the magistrate abused his discretion.[2]

■ Garrick and the guardian ad litem in the cross appeal urge that the magistrate erred in awarding Melton any fees after finding that Melton committed an ethics violation. While the magistrate found that Melton had acted improperly, he also found that no "actual or substantial prejudice" to Garrick's interests occurred, and that Melton had "otherwise proceeded with reasonable diligence in representing the Garricks." In our view New Mexico law would not require Melton to forfeit his entire fee in this situation. *Cf. Ross,* 647 P.2d at 1011 ("Professional misconduct *may* be grounds for denying an attorney his fees.")

---

**2.** Melton also argues that the magistrate improperly referred to SCRA 16–107(A)(2), which did not take effect until January 1, 1987, rather than Rule 5–105(C) of the prior Code of Professional Responsibility. SCRA 16–107(A)(2) states that a lawyer shall not represent a client where there is a conflict of interest unless "the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

Former Rule 5–105(C) states that "a lawyer may represent multiple clients if it is obvious

that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

The difference in language is not significant. The magistrate found that Melton did not "adequately outline[ ] the ramifications of the conflict of interest." Melton's conduct fails to meet the minimal standards required by either SCRA 16–107(A)(2)'s "consultation" or Rule 5–105(c)'s "full disclosure" ethical mandate.

(emphasis added); *Burk v. Burzynski*, 672 P.2d 419, 426 (Wyo.1983) (holding attorney had not forfeited fees by breach of ethical duty under facts of case). *But see Moses v. McGarvey*, 614 P.2d 1363, 1372 (Alaska 1980) (attorney disqualified on conflict of interest grounds barred from any fee recovery under Alaska law). We hold that the magistrate did not abuse his discretion in awarding Melton a fee equal to the reasonable value of the legal services rendered to the Garricks.

**B.**

■ Attorney Chris Key challenges the magistrate's determination that no valid contingent fee agreement existed between Key and Garrick and that Key should be awarded fees based on the reasonable value of Key's legal services. Key contends that the magistrate's decision is without substantial support in the record. We disagree.

The record shows that Key and Garrick discussed the material terms of the fee agreement in a series of separate letters. The correspondence between Key and Garrick does not unambiguously indicate the parties arrived at a common understanding concerning the terms of the fee agreement. Certainly this series of letters is not the situation envisioned by the New Mexico Supreme Court in *Citizens Bank*, in which the court spoke of a "standardized, unambiguous contingency fee contract," in upholding a contingent fee contract. 600 P.2d at 1217. Moreover, the record also shows that, prior to signing the settlement agreement, Key notified Garrick he intended to withdraw and indicated that he would "assert only the reasonable value of my services in generating an eventual recovery, not one-third of the value." In light of these facts, we cannot say that the magistrate abused his discretion in awarding Key a fee based on the reasonable value of his legal services.

We also find the contention of Garrick that Key should forfeit his entire fee to be without merit. Key performed beneficial legal services for Garrick, such as obtaining additional information Garrick had requested, obtaining a guardian ad litem for Garrick's two children and obtaining some additional funds at the final settlement. There is adequate evidence in the record to support awarding a reasonable fee for Key's legal services.

**III.**

Garrick (1) contends that the magistrate's order violates her family's right to freedom of religion; (2) contests the magistrate's determination that the trusts for the children continue until age twenty-one; and (3) contests the exclusion of maintenance from the list of proper expenditures payable out of the trust funds. Garrick's claims can be separated into two distinct components: those that she is asserting on behalf of her two children, and those that she is asserting on her own behalf.

**A.**

■ As a threshold matter, we must determine whether Garrick has standing to assert the claims on behalf of her children. We hold that she does not. Federal Rule of Civil Procedure 17(c) provides:

> Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, *or other like fiduciary*, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem....

Fed.R.Civ.P. 17(c) (emphasis added). The First and Fifth Circuits have held that where the infant or incompetent is represented by a general guardian or conservator, a next friend lacks standing absent express consent or court order. *See Susan R.M. v. Northeast Indep. School Dist.*, 818 F.2d 455, 458 (5th Cir.1987) ("Nothing in the federal rules, however, authorizes the parent of a child for whom a legal representative has been appointed to file an action without obtaining court authority to do so."); *Developmental Disabilities Advoca-*

*cy Center, Inc. v. Melton*, 689 F.2d 281, 285–86 (1st Cir.1982) (court refused next friend standing when general guardian objected to suit). The narrow question before this court is whether a guardian ad litem appointed pursuant to Rule 17(c) is an "other like fiduciary" that would bar Garrick from proceeding as next friend for her children on the matter for which the guardian ad litem was appointed. We hold that a court-appointed guardian ad litem is such a fiduciary, and that Garrick has no standing to raise claims on appeal on behalf of her children. *Cf. Ackel v. Ackel*, 83 Ariz. 207, 209, 318 P.2d 676, 679 (1957) ("Where the father of a minor has not moved to revoke the appointment of another as guardian ad litem for the minor, nor ever petitioned the court to be appointed as guardian for the minor, he cannot represent the minor merely because he is the minor's father, and hence he has no right as a parent to prosecute an appeal from the judgment in the case.").

■ Rule 17(c) flows from the general duty of the court to protect the interests of infants and incompetents in cases before the court. *See Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir.1978); *Noe v. True*, 507 F.2d 9, 11–12 (6th Cir.1974). Garrick through her attorney requested the appointment of the guardian ad litem because her interests might be adverse to her children's interests as they were each claimants to the same finite fund. When the court determines that the interests of the infant and the infant's legal representative diverge, appointment of a guardian ad litem is appropriate. *Noe*, 507 F.2d at 11–12. Once appointed, the guardian ad litem is "a representative of the court to act for the minor in the cause, with authority to engage counsel, file suit, and to prosecute, control and direct the litigation." *Id.* at 12. We hold that a guardian ad litem sufficiently meets the "other fiduciary" requirement of Rule 17(c) so as to deprive Garrick of standing to represent her children in the same action for which the guardian ad litem was appointed. Garrick's standing to represent her minor children in other actions remains unaffected.

Policy considerations support this result. Allowing two parties, the court-appointed guardian ad litem and Garrick, to represent the minor children interferes with the orderly development of the lawsuit because the minor children could take inconsistent positions through their multiple representatives. This case illustrates the problem. The only issue that is contested by the guardian ad litem is Melton's attorneys' fees. The other issues, *i.e.*, the freedom of religion, delayed disbursement, and lack of maintenance claims, would not be a case or controversy if the guardian ad litem were the only party with standing to take positions on the children's behalf because the guardian ad litem is not challenging the magistrate's order with respect to those issues. In our view, the policy underlying Rule 17 commands this result.

Any objection that Garrick might have to the guardian ad litem's representation should not be resolved by acting on behalf of the children as next friend. Instead, Garrick should apply to the district court to remove the guardian ad litem and/or have the court appoint another guardian ad litem to protect the children's interests.

Because of our determination of the standing issue, we do not reach Garrick's contentions on behalf of her children with respect to the claims of freedom of religion, delayed disbursement of the trust funds past the age of majority, or failure to provide for maintenance. The only party with standing to assert these claims, the guardian ad litem appointed to represent the children's interests in the settlement fund, did not appeal these provisions of the magistrate's order.

### B.

■ On her own behalf Garrick challenges the magistrate's order that the corporate trustee is to have sole discretion over the disbursement of trust funds as violating her freedom of religion. We reject this contention.

The Garricks are devout Jehovah's Witnesses. As part of their religion they have deeply-held beliefs about the appropriateness of certain types of medical proce-

dures. Garrick argues that a corporate fiduciary charged with administering the Garrick children's trust will, pursuant to a conservtive investment philosophy, refuse either to permit or pay for treatment practices in accord with the Garricks' religious beliefs. Instead, Garrick argues, the trust will seek to compel the Garrick children to undergo traditional medical treatments.

Garrick is mistaken about the role of the trustee. The trustee has no power to *compel* the Garrick children to receive any type of medical treatment. That power remains with Garrick as parent and natural guardian of her children. The trustee could, at most, refuse to pay for a medical procedure.

The trustee, however, does not have unlimited discretion to refuse to pay for medical treatment regardless of the traditional or nontraditional nature of that treatment. "Under principles of equity, a trustee bears an unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of the interests of all other parties." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981) (citing Restatement (Second) of Trusts § 170(1) (1957)); *see also Swallows v. Laney*, 102 N.M. 81, 83, 691 P.2d 874, 876 (1984) (fiduciary "holds a position of great trust and confidence and must act in utmost good faith"). Moreover, the law presumes that a trustee will act in good faith and perform its duties under the trust. *See Jefferson Nat'l Bank v. Central Nat'l Bank*, 700 F.2d 1143, 1153 (7th Cir.1983). Garrick's argument is speculative at best. If and when the trustee refuses to pay for nontraditional medical treatment, Garrick as the children's natural guardian may bring an action challenging the trustee's refusal to pay as violating the family's freedom of religion. Until the trustee takes some action actually frustrating the family's religious beliefs, the action is premature and not ripe for adjudication. *See, e.g., Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969) (quoting *United Public Workers of Am. v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947)) (" 'concrete legal issues, presented in actual cases, not abstractions' " are necessary to satisfy "case or controversy" requirement for federal subject matter jurisdiction).

### C.

■ Garrick also challenges the magistrate's decision to place the settlement funds in the registry of the court during post-trial motions and the pendency of this appeal. Garrick's first argument is that the magistrate erred in not requiring the defendants to pay the settlement funds directly to the Garricks instead of granting the defendant's motion to place the funds with the clerk of the court. We disagree.

Rule 67 of the Federal Rules of Civil Procedure permits "a party, upon notice to every other party, and by leave of court, [to] deposit with the court all or any part" of a sum of money. The language of Rule 67 leaves to the discretion of the district court the decision as to whether to permit the deposit of funds in court. We will not overturn the magistrate's decision in the absence of an abuse of that discretion.

Garrick has not shown that the magistrate abused his discretion. The defendants below had settled with the Garricks. The only remaining issue was apportionment of the settlement fund. The magistrate acted well within his discretionary authority in allowing the funds to be paid into court and excusing the defendants. His decision both ensured that the settlement fund would be available for disbursement and facilitated judicial economy by permitting the defendants, who no longer had an interest in the funds or in these proceedings, to withdraw.

Garrick's second argument is that the magistrate erred in determining he did not have jurisdiction to order disbursement of the funds from the clerk of the court, at least where no party had requested a stay of judgment. Garrick argues that the magistrate incorrectly granted a stay pending appeal without complying with Federal Rule of Civil Procedure 62 or this court's analysis in *Battle v. Anderson*, 564 F.2d 388 (10th Cir.1977) (standards for grant of stay pending appeal). Garrick contends

that because the magistrate did not grant a stay she was entitled to execute on the judgment following expiration of the ten-day automatic stay provided in Rule 62(a) and thus the magistrate erred in refusing to release the funds from the registry of the court. We disagree.

We recognize that generally a party obtaining a judgment can execute on the judgment following the ten-day automatic stay during an appeal in the absence of a stay. *See Matter of Combined Metals Reduction Co. (Bennett v. Gemmill)*, 557 F.2d 179, 190 (9th Cir.1977). In this case, however, the funds already were in the registry of the court. It is well settled that funds in the registry of the court cannot be executed against in the absence of court order. *See* 28 U.S.C. § 2042 ("No money deposited [in the registry of the court] shall be withdrawn except by order of the court."); *The Lottawanna*, 87 U.S. (20 Wall.) 201, 224, 22 L.Ed. 259 (1874) (fund in registry "is not subject to attachment either by foreign attachment or garnishment" and "no money deposited ... shall be withdrawn except by the order of the judge"). Garrick must obtain court approval before she can access the funds in the court registry.

At the time of both Garrick's and the guardian ad litem's request for release of the funds, the parties had filed notices of appeal. Once a notice of appeal is filed, jurisdiction over the case is transferred to the court of appeals. *See Riggs Nat'l Bank v. Dade Fed. Sav. & Loan Ass'n*, 268 F.2d 951, 955 (5th Cir.1959); *United States v. 329.22 Acres of Land*, 307 F.Supp. 34, 52 (M.D.Fla.1968). Upon the filing of the notice of appeal the magistrate was deprived of power over the case except insofar as he retained jurisdiction in aid of the appeal. *329.22 Acres of Land*, 307 F.Supp. at 52. The magistrate's residual power retained in aid of the appeal extends to preserving the status quo by permitting the settlement funds (about which there is no controversy) to be deposited into the registry. We hold that the magistrate's power in aid of the appeal does not extend to *approving disbursement of the funds in accordance with the very order being appealed.* The disposition of the settlement funds is the heart of the controversy before this court. We hold that the magistrate did not err in holding that he was without jurisdiction to order disbursement of funds in the registry of the court where the magistrate's order concerning the disposition and apportionment of those funds was on appeal.

## IV.

Garrick challenges the magistrate's awarding of $83,048.25 to the University of New Mexico Hospital (UNMH). Garrick contends that the magistrate had excluded all claims of the New Mexico Medical Foundation (NMMF) at the start of the trial on apportionment.[3] Garrick contends that she relied on the magistrate's statement and permitted the UNMH bills to be entered without objection.

A review of Garrick's objections to the magistrate's order and judgment does not reveal that Garrick ever brought this matter to the magistrate's attention during the trial. The issue was not preserved for appeal:

It is a well-recognized rule of frequent application that a party litigant may not sit quiet at the time action is taken in the trial court and then complain on appeal. He is required to indicate in some appropriate manner his objection or dissent. Otherwise, no question is preserved for review on appeal.

*Occidental Petroleum Corp. v. Walker*, 289 F.2d 1 (10th Cir.1961); *accord Blondo v. Bailar*, 548 F.2d 301, 305 (10th Cir.1977) (where issue not raised at trial court, inap-

---

**3.** Garrick's contention flows from the following statement by the magistrate:

Counsel, at the onset, Ms. Carter is not here, but there was some mention made at the meeting last Monday about the claims of the New Mexico Medical Foundation. They are not parties to the litigation, as I understand it.

They have not filed a lien of any kind, and their claim will not be dealt with in any way, shape or form at this hearing, for the very simple reason that my wife is a member of the New Mexico Medical Foundation Council. Rec. II, at 3–4.

propriate for court of appeals to consider it). Nor does the magistrate's action constitute such plain error as to justify independent review by this court. Garrick appears to have confused NMMF with UNMH. The magistrate awarded expenses to UNMH, not to NMMF. There is no violation of the magistrate's pre-trial statement apparent on the face of the record, and we decline to review this issue.

## V.

For the foregoing reasons, the judgment of the magistrate is AFFIRMED.