DA 12-0334

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 72

IN THE ESTATE OF C.K.O.,

     A Minor Child.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DG-07-20
Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Julio K. Morales, Laura A. Perkovic, Matthew S. Sonnichsen,
Morales Law Offices, P.C., Missoula, Montana

       For Appellee:

           Judah M. Gersh, Michael A. Viscomi, Viscomi & Gersh, PLLP,
Whitefish, Montana

                               Submitted on Briefs:  January 23, 2013

                                     Decided:  March 19, 2013

Filed:

                           _____
                                    Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    C.K.O.'s parents, Ann-Marie and Stanley, appeal an order of the District Court for the Twentieth Judicial District, Lake County, denying their motion to disqualify counsel in a personal injury matter. We affirm.

¶2    Ann-Marie and Stanley raise three issues on appeal which we have restated as follows:

¶3    1. Whether the custodial parents of a minor child have the right to demand that a law firm of the parents' choosing represent the claims of the child over the opposition of the guardian *ad litem* and conservator.

¶4    2. Whether §§ 37-61-403 and 72-5-427, MCA, are unconstitutional as applied in this case.

¶5    3. Whether § 37-61-403, MCA, conflicts with the Montana Rules of Professional Conduct.

## Factual and Procedural Background

¶6    In July 2007, Ann-Marie and her unborn child, C.K.O., sustained serious injuries in an automobile collision in Lake County, Montana. C.K.O. was delivered that same day by emergency cesarean section. Soon after the accident, Ann-Marie and her husband, Stanley, hired several attorneys, including Greg Ingraham, to represent both Ann-Marie and C.K.O. in their claims for damages resulting from the accident.

¶7    On November 9, 2007, Ann-Marie and Stanley, dissatisfied with the services of their previous attorneys, executed a contingent fee agreement with the law firm of Viscomi & Gersh (Viscomi) to represent both Ann-Marie and C.K.O. in their claims for

2

damages resulting from the accident. On December 11, 2007, Viscomi filed a Petition for Appointment of Guardian Ad Litem and Conservator for C.K.O. with the Lake County District Court. The petition explained that a significant settlement was expected as a result of the serious injuries C.K.O. suffered in the accident, and that a guardian *ad litem* (GAL) and conservator were necessary to protect and promote C.K.O.'s interests. The petition requested the appointment of Matthew O'Neill to act as GAL and conservator for C.K.O. The petition was signed by Ann-Marie and Stanley as C.K.O.'s natural parents.

¶8 Ann-Marie's case settled in October 2009. A lawsuit for C.K.O. has not yet been filed because it is too early for C.K.O.'s doctors to provide an opinion on her medical prognosis that would be sufficient for litigation or settlement purposes.

¶9 In November 2011, Ann-Marie and Stanley retained Morales Law Office (Morales) to investigate and pursue legal action against Ingraham and an individual named Edward Engel. Ingraham and Engel had made personal loans to Ann-Marie and Stanley that allegedly were subject to high interest rates and fees. In 2009, Ingraham and Engel presented invoices to Viscomi for payment of these loans. At Ann-Marie's request, Viscomi paid the loans out of her settlement funds. In November 2011, Morales filed a complaint for usury against Ingraham and Engel pertaining to these loans.

¶10 On December 7, 2011, Morales sent a letter to Viscomi advising them that, henceforth, Morales would be representing C.K.O. The letter requested C.K.O.'s file and a statement for services performed so that payment for C.K.O.'s "former" attorneys' work would be honored on a quantum meruit basis.

3

¶11 Viscomi responded by letter dated January 6, 2012, refusing to withdraw as counsel and stating that O'Neill, C.K.O.'s GAL and conservator, did not believe it was in C.K.O.'s best interests to change attorneys. Morales sent a letter in reply stating that it was the prerogative of C.K.O.'s parents to choose C.K.O.'s counsel. The letter explained that the reason Ann-Marie and Stanley wanted to change counsel was because of their "disappointment and discomfort" over the loans Viscomi paid out of Ann-Marie's settlement funds. The letter again requested all original file materials for C.K.O.

¶12 On January 27, 2012, Morales filed a Notice of Substitution of Counsel with the District Court. A few days later, Viscomi sent a letter to Morales stating that, pursuant to § 75-5-427, MCA, O'Neill had the authority to make decisions as to C.K.O.'s counsel, and that, pursuant to § 37-61-403, MCA, the Notice of Substitution of Counsel was void since it was filed without Viscomi's consent or a court order. Shortly thereafter, O'Neill filed a report with the District Court stating that it was not in C.K.O.'s best interests to change legal counsel at this time. Morales then filed a Motion to Disqualify Counsel challenging O'Neill's authority and asserting that natural parents retain the right to choose which law firm should represent their minor children, regardless of the parents' prior consent to the appointment of a GAL and conservator.

¶13 The parties briefed their positions, and on May 1, 2012, the District Court issued an Order Denying the Motion to Disqualify Counsel. In its order, the court stated that Morales had no authority to sign any documents on behalf of C.K.O. because Morales failed to comply with § 37-61-403, MCA, regarding substitution of counsel. The court explained that § 37-61-403, MCA, provides two means by which a change of attorney

4

may be made: (1) upon the consent of both the attorney of record and the client, or (2) upon an order of the court after an application made by either the attorney of record or the client, and after notice from one to the other. The court stated that Morales' motion failed under subsection (1) of the statute "because it does not contain the consent of both the attorney [Viscomi] and the client, Matthew O'Neill, Conservator, or of the parents of said minor." The court also stated that the motion failed under subsection (2) of the statute "because no change of attorney was made upon order of the Court and no application was made by either the attorney of record or the client."

¶14 Morales subsequently filed a Motion to Reconsider asking the District Court to clarify its order regarding who was considered the client in this case, C.K.O's parents or C.K.O.'s GAL and conservator. The motion noted the significant constitutional rights of Ann-Marie and Stanley as C.K.O.'s natural parents. The court denied the motion pointing out that "the Montana Rules of Civil Procedure do not contain any authority for a 'Motion to Reconsider.'" Ann-Marie and Stanley appealed.

**Standard of Review**

¶15 We review a district court's denial of a motion to disqualify counsel for an abuse of discretion. *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 2012 MT 15, ¶ 13, 363 Mont. 366, 272 P.3d 635 (citing *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 26, 303 Mont. 274, 16 P.3d 1002).

¶16 In addition, our review of constitutional questions is plenary. *Alexander v. Bozeman Motors, Inc.*, 2012 MT 301, ¶ 19, 367 Mont. 401, 291 P.3d 1120 (citing *Walters v. Flathead Concrete Products, Inc.*, 2011 MT 45, ¶ 9, 359 Mont. 346, 249 P.3d 913).

5

The constitutionality of a statute is a question of law, and we review a district court's legal conclusions for correctness. *Alexander*, ¶ 19.

**Issue 1.**

¶17    *Whether the custodial parents of a minor child have the right to demand that a law firm of the parents' choosing represent the claims of the child over the opposition of the GAL and conservator.*

¶18    Ann-Marie and Stanley argue that the District Court erroneously interjected itself into their private affairs thereby hindering their ability to make decisions concerning their child's best interests. Ann-Marie and Stanley further argue that they have a fundamental right to control and direct litigation on behalf of their minor child, and that the GAL and conservator has no right to usurp their parental authority to discharge counsel for their minor child.

¶19    Viscomi argues on the other hand that Ann-Marie and Stanley do not have a fundamental right to unilaterally choose which law firm should represent their child after they voluntarily consented to the appointment of a GAL and conservator for that child. Instead, once Anne-Marie and Stanley consented to the appointment of the GAL and conservator, they divested themselves of the right to decide what is in their child's best interests regarding legal representation in the child's personal injury claim.

¶20    The United States Supreme Court has recognized that the interest of parents in the care, custody, and control of their children is a well-established fundamental liberty interest under the Fourteenth Amendment's Due Process Clause. *Snyder v. Spaulding*, 2010 MT 151, ¶ 12, 357 Mont. 34, 235 P.3d 578 (citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000)). Similarly, this Court has observed that

6

> [t]he rights to conceive and to raise one's children have been deemed essential basic civil rights of man, and [r]ights far more precious . . . than property rights . . . . It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.

*In re J.L.B.*, 182 Mont. 100, 109, 594 P.2d 1127, 1132 (1979) (internal citations and quotation marks omitted).

¶21 Nevertheless, while parents have a fundamental right to parent their children, that right is not absolute, especially if there is a conflict of interest between the parents and the children. *See e.g. Kulstad v. Maniaci*, 2009 MT 326, ¶ 58, 352 Mont. 513, 220 P.3d 595 ("The parent's constitutionally protected interest in the parental control of a child should yield to the best interests of the child 'when the parent's conduct is contrary to the child-parent relationship.' Section 40-4-227(2)(b), MCA."); *Williams v. Superior Court*, 147 Cal. App. 4th 36, 50 (2007) ("if the parent has an actual or potential conflict of interest with his child, the parent has no right to control or influence the child's litigation." . . . Thus, a parent with a conflict of interest is no longer considered "fit" to make decisions regarding the child's litigation).

¶22 In the instant case, Ann-Marie and Stanley claim that there is no actual or potential conflict between their interests and C.K.O.'s interests, thus they retain the right to decide what is in C.K.O.'s best interests. Ann-Marie and Stanley claim that before this right can be taken away from them, they must be shown to be unfit, and no such showing has been made in this case.

¶23 We conclude that there is no need to show that a conflict exists between Ann-Marie's, Stanley's and C.K.O.'s interests or that Ann-Marie and Stanley are unfit,

7

because Ann-Marie and Stanley voluntarily relinquished their control of the litigation to the GAL and conservator. Moreover, Ann-Marie and Stanley have never petitioned the District Court for removal of the GAL and conservator.

¶24 In *Garrick v. Weaver*, 888 F.2d 687 (10th Cir. 1989), the United States Court of Appeals for the Tenth Circuit held that once a conservator or GAL has been appointed to represent the interests of a child, the parents lack standing to assert or raise claims on behalf of the child absent express consent or court order. *Garrick*, 888 F.2d at 692 (citing *Susan R.M. v. Northeast Independent School Dist.*, 818 F.2d 455, 458 (5th Cir. 1987) ("Nothing in the federal rules, however, authorizes the parent of a child for whom a legal representative has been appointed to file an action without obtaining court authority to do so.")).

¶25 In *Garrick,* two minor children and their mother were seriously injured in an automobile accident, and a guardian *ad litem* was appointed to represent the children's interests in the subsequent lawsuit. *Garrick*, 888 F.2d at 690. The court in *Garrick* relied upon Fed. R. Civ. P. 17(c)[1] to hold that once a minor or incompetent has a representative such as a conservator or GAL, the "next friend" or parents can no longer proceed to pursue a claim on behalf of their child. *Garrick*, 888 F.2d at 693. The court explained

---

[1] At the time *Garrick* was decided, Fed. R. Civ. P. 17(c) provided:

> Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem. . . .

that Rule 17(c) flows from the general duty of a court to protect the interests of infants and incompetents in cases before the court. *Garrick*, 888 F.2d at 693 (citing *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir. 1978); *Noe v. True*, 507 F.2d 9, 11-12 (6th Cir. 1974)). "Once appointed, the [GAL] is 'a representative of the court to act for the minor in the cause, *with authority to engage counsel*, file suit, and to prosecute, control and direct the litigation.' " *Garrick*, 888 F.2d at 693 (quoting *Noe*, 507 F.2d at 12) (emphasis added).

¶26 The court in *Garrick* further stated that allowing two parties, the court-appointed GAL and the parents, to represent the minor children would interfere with the orderly development of the lawsuit because the minor children could take inconsistent positions through their multiple representatives. *Garrick*, 888 F.2d at 693. The court suggested that to resolve this situation, parents should apply to the court to remove the GAL or to have the court appoint a different GAL to protect the children's interests. *Garrick*, 888 F.2d at 693.

¶27 Montana's current rule regarding representation of minors (M. R. Civ. P. 17(c)) provides:

> (c)  Minor or Incompetent Person.
> (1)  With a Representative. The following representatives may sue or defend on behalf of a minor or an incompetent person:
> (A)  a general guardian;
> (B)  a committee;
> (C)  a conservator; or
> (D)  a like fiduciary.
> (2)  Without a Representative.  A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.  The court must appoint a guardian ad litem -- or

9

issue another appropriate order -- to protect a minor or incompetent person who is unrepresented in an action.

Like the federal rule in *Garrick*, Montana's rule provides that a conservator may sue or defend on behalf of the minor, and if the minor does not have a conservator or other like fiduciary, the court must appoint a GAL to protect the minor's interests.

¶28 Thus, Montana law permits a court to appoint a GAL (§ 25-5-301, MCA), a general guardian (Title 72, chapter 5, part 2, MCA), or a conservator (Title 72, chapter 5, part 4, MCA) to represent the interests of a minor child. Although the natural parents have priority to be appointed as conservator of their minor child's estate, § 72-5-410(1)(e), MCA, the parents are also statutorily allowed to nominate someone else to serve in that capacity, § 72-5-410(2), MCA. In this case, Ann-Marie and Stanley explicitly nominated O'Neill. Moreover, the District Court's order did not place any limitations on O'Neill's authority to act in such capacity.

¶29 Nevertheless, Ann-Marie and Stanley claim that the GAL and conservator statutes are intended only to preserve and protect a ward's assets once the ward receives them. The statutes setting forth the powers and duties of a conservator, however, confer on the conservator far more authority than simply preserving and protecting existing assets. For example, § 72-5-427, MCA, confers the following powers and duties on a conservator:

> (3) A conservator, acting reasonably in efforts to accomplish the purpose for which the conservator was appointed, may act without court authorization or confirmation to:
>
> .   .   .
>
> (w) *employ persons, including attorneys*, auditors, investment advisors, or agents, even though they are associated with the conservator, to advise or assist the conservator in the performance of administrative duties,

10

act upon their recommendation without independent investigation, and instead of acting personally, *employ one or more agents to perform any act of administration*, whether or not discretionary;

(x) *prosecute or defend actions, claims, or proceedings* in any jurisdiction for the protection of estate assets and of the conservator in the performance of the conservator's duties . . . . [Emphasis added.]

¶30 Further, the current position of Ann-Marie and Stanley is contrary to that set forth in their Petition for Appointment of Guardian Ad Litem and Conservator wherein they specifically stated "it is in [C.K.O.'s] *best interests* to have a guardian ad litem and conservator appointed for the purpose of *overseeing [C.K.O.'s] interests in her claims arising from the . . . accident*" (emphasis added). Additionally, in the Consent and Waiver of Notice section of their petition, Ann-Marie and Stanley represented that they consented "to the appointment of Matthew H. O'Neill as guardian ad litem and conservator of [C.K.O.] *in regards to the legal claims she has arising from the . . . accident*" (emphasis added).

¶31 Thus, although Ann-Marie and Stanley contend that O'Neill was only appointed to protect C.K.O.'s assets *once she receives them*, their petition and supporting documents state otherwise. As requested and petitioned by Ann-Marie and Stanley, O'Neill was to oversee C.K.O.'s legal claims arising from the accident. This necessarily includes overseeing the litigation itself, including making decisions as to which counsel should represent C.K.O.

¶32 Accordingly, we hold that when Ann-Marie and Stanley consented to the appointment of a GAL and conservator to act in C.K.O.'s best interests in "the legal

11

claims she has arising from the . . . accident," they divested themselves of the right to determine who should represent C.K.O. in her personal injury claim.

**Issue 2.**

¶33 *Whether §§ 37-61-403 and 72-5-427, MCA, are unconstitutional as applied in this case.*

¶34 Ann-Marie and Stanley contend that §§ 37-61-403 and 72-5-427, MCA, as applied by the District Court in this case, unconstitutionally usurp their fundamental parental rights in the care, custody and control of their child. Viscomi argues on the other hand that these statutes are not unconstitutional as applied by the District Court because there is a legitimate governmental interest in making sure that the best interests of the child are considered in the selection of attorneys to represent the child in a personal injury case.

¶35 All legislative enactments are presumed to comply with the Montana Constitution. *Disability Rights Montana v. State*, 2009 MT 100, ¶ 18, 350 Mont. 101, 207 P.3d 1092 (citing *Bean v. State*, 2008 MT 67, ¶ 12, 342 Mont. 85, 179 P.3d 524). The party challenging a statute's constitutionality bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Walters v. Flathead Concrete Products, Inc.*, 2011 MT 45, ¶ 32, 359 Mont. 346, 249 P.3d 913 (citing *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 10, 353 Mont. 265, 222 P.3d 566; *Henry v. State Compensation Ins. Fund*, 1999 MT 126, ¶ 11, 294 Mont. 449, 982 P.2d 456). Furthermore, we construe statutes narrowly to avoid a finding of unconstitutionality, and we resolve any questions of constitutionality in favor of the statute. *Disability Rights Montana*, ¶ 18.

¶36    Section 37-61-403, MCA, one of the statutes that Ann-Marie and Stanley claim is unconstitutional as applied in this case, provides as follows:

> **Change of attorney.**    The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows:
> (1)  upon consent of both client and attorney, filed with the clerk or entered upon the minutes;
> (2)  upon the order of the court, upon the application of either client or attorney, after notice from one to the other.

Based on this statute, an attorney may be changed at any time with the consent of *both* the attorney and the client, or by order of the court after application of *either* the attorney or the client.  Even if we were to assume *arguendo* that Ann-Marie and Stanley are the clients in this case, they failed to comply with either provision of the statute because they did not secure the consent of the attorney of record, nor did they apply to the District Court for an order to change the attorney of record.  Just because Ann-Marie and Stanley failed to comply with the statute does not make the statute unconstitutional.

¶37    In addition, as we determined in the previous issue, while it is true that Ann-Marie and Stanley have a fundamental interest in the care, custody and control of C.K.O, they *voluntarily* divested themselves of control over C.K.O.'s legal action when they consented to the appointment of a GAL and conservator.  Section 72-5-427, MCA, confers on the conservator the power to "prosecute or defend actions, claims, or proceedings" on behalf of the minor child, or to "employ persons, including attorneys," to assist in representing the interests of the minor child.  Simply because Ann-Marie and Stanley are unhappy with the decision the GAL and conservator made regarding legal representation in C.K.O.'s cause of action, does not make the statute unconstitutional.

13

Moreover, Ann-Marie and Stanley did not request that the District Court replace O'Neill as the GAL and conservator for C.K.O.

¶38    We conclude that Ann-Marie and Stanley have failed to meet their burden of proving the statutes unconstitutional beyond a reasonable doubt.  Therefore, we hold that §§ 37-61-403 and 72-5-427, MCA, are not unconstitutional as applied in this case.

**Issue 3.**

¶39    *Whether § 37-61-403, MCA, conflicts with the Montana Rules of Professional Conduct.*

¶40    Ann-Marie and Stanley argue that § 37-61-403, MCA, attempts to override this Court's plenary power to control and direct the conduct of attorneys, especially regarding when and how an attorney must withdraw.  They maintain that under § 37-61-403, MCA, a lawyer may only be removed from his duties if both the client and the lawyer agree.  Consequently, they contend that § 37-61-403, MCA, is in conflict with the Montana Rules of Professional Conduct, specifically M. R. P. C. 1.16(a)(3), thus the statute must be declared unconstitutional as applied.

¶41    There is no conflict between § 37-61-403, MCA, and Rule 1.16(a)(3).  Instead, the two work in conjunction with each other.  Rule 1.16(a)(3) provides that a lawyer "shall withdraw from the representation of a client if . . . the lawyer is discharged," while § 37-61-403, MCA, provides a method on how that discharge is to be accomplished[2]—

---

[2]    Section 37-61-403, MCA, refers to a change of attorney in "an action or special proceeding."  Outside of litigation, a lawyer may be discharged and thus be required to withdraw under Rule 1.16(a)(3) without obtaining court approval.

14

upon the consent of *both* the attorney and the client, or by order of the court upon the application of *either* the attorney or the client.

¶42 Ann-Marie's and Stanley's rationale is based upon their incorrect assumption that they are the client in the personal injury proceedings pursued on behalf of C.K.O. by the GAL and conservator. However, because C.K.O. is a minor child, the GAL and conservator was granted the power and authority to make decisions on C.K.O.'s behalf regarding the litigation. The Montana Rules of Professional Conduct specifically contemplate that a GAL and conservator should be appointed to represent an individual with diminished capacity such as a minor child. M. R. P. C. 1.14(b). Consistent with § 37-61-403, MCA, a change in counsel for CKO requires the consent of the client (C.K.O.'s GAL and conservator) and counsel, or an order of the court upon the application of either the attorney or the client.

¶43 In this case, when Viscomi received Morales' letter, Viscomi went to O'Neill, C.K.O.'s GAL and conservator, and asked O'Neill for his direction with respect to Ann-Marie's and Stanley's request that Viscomi withdraw. O'Neill determined that, contrary to Ann-Marie's and Stanley's wishes, it would not be in C.K.O.'s best interests to change attorneys at this time. O'Neill filed his "Report to the Court" stating that Viscomi has done "significant legal work in evaluating and preparing for the negotiation and resolution of the minor's claims against the tort-feasor that caused the minor's injuries." O'Neill also stated that in his opinion Viscomi was "best suited to complete the negotiation and resolution of the minor's tort claims and that it would not be in the best interest of the minor to change legal counsel" as suggested by her parents.

¶44     We therefore hold that § 37-61-403, MCA, does not conflict with the Montana Rules of Professional Conduct.

¶45     Affirmed.

/S/ LAURIE McKINNON


We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE