DA 07-0049

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 67

DOUGLAS L. BEAN, TERRY L. BOULE, DOUGLAS J. CASSON, LOUIS E. COSTANTINO, JAMES A. DIXON, BRIAN W. DUVE, TONY L. EHNES, GLENN G. GASVODA, ERICK C. GILBERT, CURT K. GRAVES, BRIAN G. KNOWLES, DAVID M. LEE, JOSEPH M. MCKAMEY, DOUGLAS E. MAHONEY, DAVID W. PATCH, BILLY C. PLUNKETT, ROBERT L. RUTHERFORD, EZRA D. SCHEI, RICHARD A. SCHMIDT, JERRY L. SCHULTZ, RICK R. SILVA, DARNELL A. STUCKER, JACKIE L. WILLIARD, JR., RAYMON A. YODER, and ANTHONY K. HERING, SR.,

       Plaintiffs and Appellees,

  v.

STATE OF MONTANA, and the MONTANA PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION,

       Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV 2004-707
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

         Hon. Mike McGrath, Attorney General; Jon Ellingson, Assistant Attorney General, Helena, Montana

      For Appellees:

         Baldwin Robertson and Kurt Rumsfeld, Woodley & McGillivary, Washington, D.C.

         Timothy J. McKittrick, McKittrick Law Firm, Great Falls, Montana

         Submitted on Briefs:  January 16, 2008
         Decided:  February 26, 2008

Filed:

_____
               Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    The State of Montana and the Montana Public Employee Retirement Administration (collectively State) appeal from two orders of the First Judicial District Court, Lewis and Clark County, concluding that § 19-13-210(2), MCA, violates the equal protection rights of Douglas L. Bean, et al. (Bean) under the Montana Constitution and awarding attorney fees and costs to Bean. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Senator Jon Tester introduced Senate Bill 289 (SB 289) at the 2001 Montana Legislative Session. Mont. Sen. 289, 57th Leg., Reg. Sess. (Jan. 22, 2001). SB 289 proposed amendments to § 19-13-210, MCA. The bill provided for the transfer of the firefighters employed by the Montana Air National Guard (Guard) from the Public Employees Retirement System (Public System) into the Firefighters' Unified Retirement System (Firefighters' System).

¶3    SB 289 came before the Senate State Administration Committee on January 29, 2001. Senator Tester testified that Guard firefighters participated in the Public System. Senator Tester explained that the Guard firefighters sought membership in the Firefighters' System because it provides benefits specifically geared towards firefighters. Senator Tester stated that SB 289 automatically enrolled Guard firefighters hired on or after October 1, 2001, into the Firefighters' System. The original version of SB 289 that Senator Tester had introduced also included a provision that gave Guard firefighters hired before October 1, 2001, the option of transferring from the Public System into the Firefighters' System.

2

¶4 Roger Hagan (Hagan), representing the Great Falls Airport Firefighters Association, also testified before the Senate Finance and Claims Committee. Hagan asserted that SB 289 corrected a "longstanding inequity" between Guard firefighters and other firefighters in the state of Montana. Hagan testified that Guard firefighters had to participate in the Public System while firefighters of first and second class cities in Montana obtained superior benefits through the Firefighters' System.

¶5 Hagan testified that Guard firefighters constituted federal employees before 1975. They participated in a retirement system specific to firefighters under the Federal Civil Service Program. Hagan explained that Guard firefighters became state employees in 1975. Guard firefighters joined the Public System when they became state employees. Hagan testified that Guard firefighters would remain ineligible for the special benefits available under the Firefighters' System in Montana unless the legislature enacted SB 289.

¶6 The original version of SB 289 included a fiscal note that projected general fund expenditures of $200,967 for fiscal year 2002 and $313,508 for fiscal year 2003. SB 289 underwent revisions during the 2001 Legislative Session. An initial amendment to SB 289 delayed the transfer option for existing Guard firefighters from the Public System into the Firefighters' System until April 1, 2003. The delayed transfer option for existing Guard firefighters reduced the general fund expenditures. The fiscal note attached to the amended bill projected general fund expenditures of $6,300 for fiscal year 2002 and $89,060 for fiscal year 2003.

¶7 The final version of SB 289 provided that only those firefighters hired by the Guard on or after October 1, 2001, would participate in the Firefighters' System. Firefighters employed by the Guard before October 1, 2001, would remain in the Public System. The fiscal note for this version of the bill, which assumed one new hire each year, projected general fund costs of $6,522 for fiscal year 2002 and $18,171 for fiscal year 2003. Senator Tester brought this final version of SB 289 before the House State Administration Committee on March 28, 2001. Proponents of the bill testified that the amended version constituted a start toward enrolling the Guard firefighters in the Firefighters' System. The Legislature passed the final amended version of SB 289 and the Governor signed it into law. 2001 Mont. Laws 1382. The final amended version of SB 289 denied approximately twenty-two existing Guard firefighters the option of transferring into the Firefighters' System.

¶8 Bean filed an action in District Court on September 24, 2004, alleging that § 19-13-210(2), MCA, violated certain Guard firefighters' right to equal protection under the Montana Constitution. Bean and the State filed cross-motions for summary judgment. The District Court granted summary judgment in favor of Bean, declaring unconstitutional § 19-13-210(2), MCA. The District Court awarded costs and attorney fees to Bean. The State appeals.

**STANDARD OF REVIEW**

¶9 We review de novo a grant of summary judgment using the same criteria applied by the district court. *Farrier v. Teacher's Retirement Bd.*, 2005 MT 229, ¶ 10, 328 Mont. 375,

¶ 10, 120 P.3d 390, ¶ 10. We limit our review to questions of law where the material facts remain uncontroverted. *Farrier*, ¶ 10.

## DISCUSSION

¶10 Bean asserts that § 19-13-210(2), MCA, violates his right to equal protection under the Montana Constitution by providing superior retirement benefits for newly hired Guard firefighters while denying those superior retirement benefits for existing Guard firefighters. Bean argues that, but for the date of hire, Guard firefighters hired on or after October 1, 2001, and firefighters hired before that date constitute similarly situated classes. Bean argues that no legitimate governmental purpose exists for providing differing benefits to these similarly situated firefighters.

¶11 Article II, Section 4, of the Montana Constitution ensures that "[n]o person shall be denied the equal protection of the laws." Article II, Section 4, like the Fourteenth Amendment of the United States Constitution, requires the law to treat similarly situated individuals in a similar manner. *Farrier*, ¶ 14. Indeed, Montana's Constitution provides even more individual protection than that of the Equal Protection Clause set forth in the United States Constitution. *Farrier*, ¶ 14.

¶12 We start with the presumption that all legislative enactments comply with Montana's Constitution. *Powell v. State Compensation Ins. Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, ¶ 13, 15 P.3d 877, ¶ 13. The party challenging a statute bears the burden of establishing the statute's unconstitutionality beyond a reasonable doubt. *Farrier*, ¶ 13. We construe statutes

5

narrowly to avoid a finding of unconstitutionality, and we resolve any questions of constitutionality in favor of the statute. *Farrier*, ¶ 13.

¶13 We first must identify the classes involved when analyzing an equal protection challenge. *Farrier*, ¶ 15. A statute does not violate the right to equal protection simply because it benefits a particular class. *Farrier*, ¶ 15. A statute may impose different treatment upon differing groups or classes of people. *Powell*, ¶ 22. An equal protection challenge fails if the groups at issue do not constitute similarly situated classes. *Powell*, ¶ 22.

¶14 The District Court found that § 19-13-210(2), MCA, differentiated between two similarly situated classes of employees. The court noted that Guard firefighters hired on or after October 1, 2001, performed the same duties, faced the same job hazards, and worked in the same positions as Guard firefighters hired before that date. The District Court, citing our decision in *Gulbrandson v. Carey*, 272 Mont. 494, 901 P.2d 573 (1995), found that the date contained in the statute created two classes of employees. The court determined that the statute's cut-off date did not render dissimilar the two groups of firefighters.

¶15 The Court faced the question in *Gulbrandson* of whether a statute violated the right to equal protection when it provided superior retirement benefits to judges retiring after a date established by statute. *Gulbrandson*, 272 Mont. at 502, 901 P.2d at 578. Gulbrandson challenged the statute that provided greater retirement benefits to judges who retired after July 1, 1991. *Gulbrandson*, 272 Mont. at 497, 901 P.2d at 575. The Court determined in *Gulbrandson* that a rational relationship existed between the cut-off date in the statute and

6

the legitimate government interest of encouraging extended judicial service. *Gulbrandson*, 272 Mont. at 504-05, 901 P.2d at 580.

¶16     The Court examined the statute at issue in *Gulbrandson* under the rational relationship test that we employ in our equal protection analysis. *Gulbrandson*, 272 Mont. at 503, 901 P.2d at 579. The Court determined that no equal protection violation existed in light of the statute's classifications. *Gulbrandson*, 272 Mont. at 504, 901 P.2d at 579-80. The Court recognized that the cut-off retirement date set by the statute functioned "not unlike most legislation which, by its very nature, contains or produces classifications regarding benefits, applicability and the like by virtue of a change in statute at a particular point in time." *Gulbrandson*, 272 Mont. at 504, 901 P.2d at 579-80. The Court also noted that the statute operated equally upon those within each class: the statute denied the benefit increase equally for all judges retiring before the statutory deadline, while it increased benefits equally for all judges retiring after the deadline. *Gulbrandson*, 272 Mont. at 504, 901 P.2d at 580.

¶17     Section 19-13-210(2), MCA, restructured the retirement system for Guard firefighters by creating one class of firefighters hired on or after October 1, 2001, and one class consisting of all Guard firefighters hired before that date. Like the cut-off date that the Court examined in *Gulbrandson*, the date set forth in § 19-13-210(2), MCA, created two dissimilar classes of firefighters. *See e.g. Wilkes v. State Fund*, 2008 MT 29, ¶¶ 20, 26, 341 Mont. 292, ¶¶ 20, 26, ___ P.3d ___, ¶¶ 20, 26.

¶18     We have recognized on several occasions that "[a]ll things must have a period of adjustment, and such classification is not 'arbitrary classification.'" *E.g. Montana Land Title*

7

*Ass'n v. First American Title*, 167 Mont. 471, 475, 539 P.2d 711, 713 (1975) (citations omitted). Here the legislature enacted a revision to the Firefighters' System that involves a period of adjustment until all Guard firefighters gain membership in the Firefighters' System. This Court previously has approved legislative alterations of statutory rights and responsibilities, noting that "[t]he constitutional provisions against discrimination do 'not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.'" *State v. Abstracters Board of Examiners*, 99 Mont. 564, 581, 45 P.2d 668, 672 (1935) (quoting Justice Holmes in *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505, 31 S. Ct. 490, 491 (1911)). The alleged distinction will end once all Guard firefighters hired before October 1, 2001, have retired.

¶19    Furthermore, the legislature may approach a problem in a piecemeal fashion, "applying the legislation to one phase of the problem and not affecting others." *Arneson v. State, by Dept. of Admin.*, 262 Mont. 269, 274-75, 864 P.2d 1245, 1248 (1993). The 2001 Legislature recognized the fact that leaving Guard firefighters in the Public System while other public firefighters participated in the Firefighters' System created an inequitable situation. Rather than approaching this inequity with an immediate and comprehensive solution, however, the legislature chose to correct this imbalance by phasing Guard firefighters into the Firefighters' System.

¶20    Section 19-13-210(2), MCA, represents a legislative choice to provide a prospective retirement solution for all newly hired Guard firefighters without affecting the retirement expectations of existing Guard firefighters. Section 19-13-210(2), MCA, operates equally

upon members of each class of firefighters. All Guard firefighters hired before October 1, 2001, remain in the Public System, while all Guard firefighters hired on or after the statutory date participate in the Firefighters' System. Section 19-13-210(2), MCA. The legislative approach to correcting the "longstanding inequity" between Guard firefighters and other public firefighters set forth in § 19-13-210(2), MCA, did not violate Bean's right to equal protection.

¶21 We reverse the District Court's orders granting summary judgment and awarding attorney fees and costs to Bean.

/S/ BRIAN MORRIS

We Concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART

Justice Patricia O. Cotter concurs.

¶22 I concur in the Court's decision. I do so for the reasons set forth therein, and because, as a practical matter, the end result if we affirm the District Court's decision would be that *none* of the firefighters employed by the Guard would receive the benefit of participating in the Firefighters' System. While I agree with the firefighters that the result reached by the Legislature is imperfect, it nonetheless is a step in the right direction—i.e., the newly hired firefighters will now have the opportunity to receive better benefits.

9

¶23    In *Henry v. State Compensation Ins. Fund*, 1999 MT 126, 294 Mont. 449, 982 P.2d 456, we concluded that depriving workers suffering occupational diseases of the opportunity to receive rehabilitation benefits was not justifiable solely on the basis of economic factors, citing our decision in *Heisler v. Hines Motor Co.*, 282 Mont. 270, 937 P.2d 45 (1997), for the proposition that cost control alone cannot justify offering services to some while denying them to others. *Henry,* ¶ 40.  In this connection, it bears noting that the cost control factor was offered by the State in *Henry* as a justification for *limiting* some workers' rights or benefits.  Here, by contrast, the State has accomplished through legislation an *improvement* of some workers' benefits.  While I do not condone piecemeal increases in benefits if a wholesale increase is both an available and affordable alternative, it would be counter-productive were we to say here that, because the State could not provide increased benefits for all firefighters at once, none should get them.  Yet, this would be the result were we to affirm.  I therefore concur.

/S/ PATRICIA COTTER

Justice James C. Nelson joins in the Concurrence of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON