DA 08-0270

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 100

DISABLILITY RIGHTS MONTANA, a Montana not-for-profit corporation, f/k/a Montana Advocacy Program, Inc.,

        Plaintiff and Appellant,

  v.

STATE OF MONTANA,

        Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 06-930
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Andree Larose, Reynolds, Motl & Sherwood, Helena, Montana
            Anita Roessmann, Disability Rights Montana, Helena, Montana

        For Appellee:

            Hon. Steve Bullock, Montana Attorney General; J. Stuart Segrest and Ali
            Bovingdon, Assistant Attorneys General, Helena, Montana

                Submitted on Briefs:  March 4, 2009

                         Decided:  March 31, 2009

Filed:

              _____
                             Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Disability Rights Montana (Disability Rights) appeals from the District Court's order granting summary judgment to the Department of Health and Human Services (Department), and denying attorneys fees to Disability Rights. We affirm.

¶2 Disability Rights raises the following issues on appeal:

¶3 1. Whether § 41-3-205, MCA, provides a reasonable means of balancing the privacy interests inherent in abuse and neglect cases with the public's right to know.

¶4 2. Whether the District Court correctly denied Disability Rights' motion for attorneys fees.

PROCEDURAL HISTORY

¶5 Disability Rights notified the Department and the Lake County Attorney's office of allegations of child abuse and neglect at the Swan Valley Youth Academy (Academy). Disability Rights' report of abuse prompted an investigation of the Academy. The State's Quality Assurance Division Licensure Bureau (Bureau) prepared a report that was distributed to the public. The Department's Child and Family Services Division (CFSD) prepared what became known as the Final Investigative Report (Final Report).

¶6 The Final Report discussed the allegations of abuse and neglect by staff at the Academy. The Department had licensed the Academy as a child care agency in February 2000 and designated the Academy as a residential treatment center. The Academy ceased doing business in Montana in 2006.

2

¶7     Disability Rights is a statutorily authorized entity allowed to obtain child abuse information pursuant to § 41-3-205(3)(f), MCA. The Department provided the Final Report to Disability Rights. Disability Rights had wanted to disseminate the Final Report without seeking a court order. The Department's cover letter cautioned, however, that § 41-3-205(7), MCA, required Disability Rights to maintain confidentiality of the Final Report and that Disability Rights was forbidden from disseminating the Final Report.

¶8     Disability Rights filed an action that sought public dissemination of the Final Report. Disability Rights argued to the District Court that the restrictions on public dissemination inhibited Disability Rights' ability to seek appropriate remedies to protect the rights of children with emotional disturbance, mental illness, or developmental disabilities. Disability Rights moved the District Court, pursuant to the procedures set forth in § 41-3-205(2), MCA, to conduct an *in camera* inspection to determine whether public disclosure should be permitted. The District Court permitted Disability Rights to distribute the report based on the District Court's *in camera* inspection. The District Court further redacted information as to Academy staff mentioned in the Final Report.

¶9     Disability Rights proceeded to seek an order invalidating § 41-3-205(7), MCA, as being facially unconstitutional due to its alleged failure to balance the public's right to know against the rights of individual privacy. Disability Rights asserted that the Department's redactions of personally identifiable information sufficiently protected an individual's right to privacy. Disability Rights also sought an award of attorneys fees pursuant to § 2-3-221, MCA.

3

¶10 The District Court determined that disclosure of child abuse and neglect records required a case-by-case analysis and review of the redacted materials. The court refused to provide prospective relief. The court cited our decision in *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 24, 333 Mont. 331, 142 P.3d 864, to support its conclusion that prospective relief would be inappropriate in balancing the individual rights to privacy against the public's right to know in cases of child abuse and neglect. The District Court further reasoned that the legislature had identified the sensitive and private nature of documents relating to child abuse and neglect and classified them as confidential. The court determined that the fact that section (7) allows a balance between privacy interests and the right to know precluded a determination that the statute is unconstitutional on its face.

¶11 With respect to the as-applied challenge, the court recognized its obligation to ensure that privacy interests are protected no matter how well the confidential document has been reviewed and redacted by the agency. The court acknowledged that Disability Rights and other statutorily authorized entities were entitled to receive such confidential information. The court further recognized the costs in obtaining an *in camera* review from the court. The court nevertheless determined that it was obligated to ensure a proper balance between protection of individuals' privacy rights and dissemination of the information.

¶12 The court also denied Disability Rights' request for attorneys fees. The court reasoned that fees would be inappropriate in light of the fact that it had reviewed the confidential document and had redacted further information from the Final Report. Disability Rights appeals.

4

STANDARD OF REVIEW

¶13    We review de novo a grant of summary judgment using the same criteria applied by the District Court. *Farrier v. Teacher's Retirement Bd.*, 2005 MT 229, ¶ 10, 328 Mont. 375, 120 P.3d 390. We limit our review to questions of law where the material facts remain uncontroverted. *Farrier*, ¶ 10. We review a district court's award or denial of attorneys fees for an abuse of discretion. *Billings High Sch. Dis. No. 2 v. Billings Gazette*, 2006 MT 329, ¶ 23, 335 Mont. 94, 149 P.3d 565. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reasons. *Billings High School*, ¶ 23.

DISCUSSION

¶14    *Whether § 41-3-205, MCA, provides a reasonable means of balancing the privacy interests inherent in abuse and neglect cases with the public's right to know.*

¶15    Disability Rights asserts that § 41-3-205(7), MCA, violates the public's constitutional right to know as set forth in Article II, Section 9, of the Montana Constitution. Article II, Section 9, of the Montana Constitution ensures that no person "shall be deprived of the right to examine documents or to observe deliberation of all public bodies or agencies of state government and its subdivisions, . . . ." Article II, Section 9 exempts from its scope only those documents or deliberations of public bodies "in which the demand of individual privacy clearly exceeds the merits of public disclosure."

¶16    Disability Rights alleges that subsection (7) broadly prohibits the disclosure of all child abuse and neglect case records without balancing the public's right to know. In doing

5

so, Disability Rights argues that the legislature improperly declared a whole class of information confidential and unavailable to the public. Disability Rights cites to our decision in *Worden v. Montana Bd. of Pardons and Parole*, 1998 MT 168, ¶ 22, 289 Mont. 459, 962 P.2d 1157, to support its claim that the legislature cannot declare a whole class of information confidential and unavailable to the public.

¶17 Disability Rights contends that the statute fails to distinguish between case records involving alleged abuse or neglect in the family home and case records involving investigations of the treatment of children in public or private facilities. Disability Rights asserts that the statute's broad presumption of confidentiality as to all abuse and neglect records improperly places the burden on the public to demonstrate its interest in disclosure, rather than properly placing the burden where it belongs--on those seeking to establish a constitutionally protected privacy interest that outweighs the merits of public disclosure.

¶18 We start with the presumption that all legislative enactments comply with Montana's constitution. *Bean v. State*, 2008 MT 67, ¶ 12, 342 Mont. 85, 179 P.3d 524. The party challenging a statute bears the burden of establishing the statute's unconstitutionality beyond a reasonable doubt. *Bean*, ¶ 12. We construe statutes narrowly to avoid a finding of unconstitutionality, and we resolve any questions of constitutionality in favor of the statute. *Bean*, ¶ 12.

¶19 Section 41-3-205(1), MCA, provides that "all records concerning reports of child abuse and neglect must be kept confidential except as provided by this section." Subsection (7) further requires that persons or entities authorized to receive records "maintain the

6

confidentiality of the records." Subsection (7) prohibits these authorized persons or entities to disclose the information in the records to anyone other than state or federal agencies who are authorized to receive the reports.

¶20 Disability Rights further contends that weighing competing constitutional interests on a case by case basis should not require judicial oversight of every single records request presenting an identical fact pattern. The State takes issue with Disability Rights' request for prospective relief. The State notes that this Court rejected such prospective relief in *Havre Daily News*, ¶ 17. There the newspaper asserted that its request for a prospective relief in the form of changing the policy of the local police department to allow dissemination of criminal justice information presented a justiciable issue.

¶21 This Court disagreed based on the notion that each determination regarding the dissemination of criminal justice information "requires careful, fact-specific balancing of conflicting constitutional rights." *Havre Daily News*, ¶ 21. We determined that the specific facts of each report containing criminal justice information had to be balanced on a case-by-case basis due to the different privacy interests that may arise in each case. We noted that an *in camera* review of investigative reports is "essential in determining whether or not the privacy interests of the victim and witnesses can be protected while disseminating the remainder of the information." *Havre Daily News*, ¶ 23. We rejected prospective relief in light of the factually specific inquiry presented by each new claim.

¶22 Here too Disability Rights seeks a form of prospective relief. As we have noted, in order to balance the constitutional right to know against the conflicting constitutional right of

7

individual privacy, a reviewing court "would first ascertain whether the individual has an expectation of privacy." *Havre Daily News*, ¶ 23, quoting *Bozeman Daily Chronicle v. Police Dept.*, 260 Mont. 218, 225, 859 P.2d 435, 439 (1993). This inquiry presents "purely a question of fact." *Havre Daily News*, ¶ 23. Resolution of this purely factual inquiry triggers the legal determination of whether society would recognize as reasonable the privacy interest at stake. *Havre Daily News*, ¶ 23. We once again must engage in a reasoned consideration of the underlying facts. Only at that point would a court evaluate whether the merits of public disclosure exceeded the privacy interests at issue. *Havre Daily News*, ¶ 23.

¶23 Any future report prepared by the Department regarding alleged abuse or neglect will present a unique factual scenario that requires a careful balancing of the constitutional provisions at issue. The legislature has attempted to provide a mechanism for conducting this balancing of interests in the form of subsection (2). We cannot determine that § 41-3-205, MCA, is facially unconstitutional in light of the myriad of future factual scenarios to which it must be applied. We decline to grant prospective relief to Disability Rights regarding any future reports when subsection (2) provides a rational means to obtain an order to disseminate future reports.

¶24 Disability Rights takes issue with the notion that the *in camera* inspection provision in section (2) saves the statute from constitutional infirmity. Disability Rights argues that section (2) applies only where a court already has a separate issue before it and the court must address the question of whether to disclose the record in order to resolve the already pending issue. Disability Rights cites Justice Weber's concurring opinion in *Wyse v. District*

8

*Court of the Fourth Jud. Dist.*, 195 Mont. 434, 438, 636 P.2d 865, 867 (1981) (Weber, J., concurring), to support its interpretation.

¶25    The State argues that the balancing mechanism in section (2) properly permits public disclosure after *in camera* inspection by a district court.  The State suggests that Disability Rights' advocacy of distributing reports without a case by case analysis would swing the balance too far toward the right to know by presuming the reports are distributable "on a wholesale basis," without balancing against the right to privacy.  The State contends that we rejected such a wholesale approach to the Article II, Section 9 analysis in *Associated Press, Inc. v. Department*, 2000 MT 160, 300 Mont. 223, 4 P.3d 5.

¶26    Media organizations challenged an administrative regulation that declared tax returns and other documents required to be submitted to the Department of Revenue relating to the coal severance tax to be confidential.  *Associated Press*, ¶ 22.  The Department of Revenue defended its blanket regulation on the grounds that a taxpayer has a protected privacy interest in the information unless it clearly is proven otherwise.  *Associated Press*, ¶ 25.  We rejected the Department of Revenue's view that these tax documents were private "on a wholesale basis" without balancing the public's right to know.  We deemed the regulation to be unconstitutional on its face absent some mechanism that would allow a method of disclosure when a party could demonstrate that the public's right to know exceeded the taxpayer's right to privacy.  *Associated Press*, ¶ 28.

¶27    The State contends that subsection (2) provides the mechanism for a party to demonstrate that the public's right to know exceeds the individual's right to privacy.  In fact,

9

§ 41-3-205, MCA, authorizes the Department to distribute reports of abuse and neglect to Disability Rights. Disability Rights argues that the statute's confidentiality provisions and its prohibition on dissemination effectively nullify any value in its mere receipt of these reports. The State correctly argues, however, that § 41-3-205(2), MCA, did not present an insurmountable barrier to disclosure in this case. The State points to the fact that the District Court allowed Disability Rights to further disseminate the reports, after making further redactions, as evidence that the system works.

¶28 Finally, the State points out that the Court in *Wyse* never adopted Justice Weber's view that the *in camera* inspection contemplated by subsection (2) required an issue separate from the disclosure question to be before the court in order for the court to conduct an in camera review. The Court stated that a person "simply had to file a petition requesting release of the information and an 'issue' would have been before the court." *Wyse*, 195 Mont. at 437. We agree. Subsection (2) provides a mechanism for a court to evaluate on a case by case basis whether the public's right to know exceeds the individual rights to privacy. Accordingly, the District Court correctly denied Disability Rights' facial challenge to the constitutionality of § 41-3-205, MCA.

¶29 *Whether the District Court abused its discretion by denying Disability Rights' request for attorneys fees.*

¶30 Disability Rights argues that the District Court erred in denying its request for attorneys fees. Disability Rights contends that it prevailed in the litigation as evidenced by the District Court's decision to allow dissemination subject to minor redactions. Disability

10

Rights relies on the fact that the Department forced it to file an order to obtain and disseminate child abuse and neglect records.

¶31 Section 2-3-221, MCA, provides that a plaintiff who prevails in an action brought in District Court to enforce the plaintiff's rights under Article II, Section 9, of the Montana Constitution may be awarded costs and reasonable attorneys fees. The District Court determined that an award of attorneys fees would be inappropriate in light of its determination that the statute worked. The court reviewed the equities involved and the sensitive nature of the materials in question in its attempt to remove all personally identifiable information. The court redacted additional information.

¶32 As noted in *Billings High School*, an award of attorneys fees in right-to-know cases is permissive. *Billings High School*, ¶ 30. We affirmed a denial of fees in *Billings High School* based upon our determination that the parties "took a reasonable approach to present a matter to the court to resolve." *Billings High School*, ¶¶ 28, 30.

¶33 The District Court determined that the parties had taken a reasonable approach in presenting the issues to the court for prompt resolution. It is not our place to substitute our judgment for that of the district court. *Billings High School*, ¶ 32. We cannot conclude based upon the record before us that the District Court failed to employ its conscientious judgment in denying Disability Rights' request for attorneys fees.

¶34 Affirmed.

/S/ BRIAN MORRIS

11

We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE